IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:13-488-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| RECO HAM | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 134).  Seeking compassionate release, the defendant states that his medical conditions constitute an extraordinary and compelling reason for his immediate release.

The government argues that the defendant has not demonstrated an extraordinary and compelling reason for consideration of a sentence reduction.  Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.   The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v.*

*Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise."  *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification.  28 U.S.C. § 994(t).  Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps.  *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021).  First, the court determines whether "extraordinary and compelling

reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

4

It appears to this court that the defendant has fully exhausted his administrative remedies. Therefore, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

The defendant states that he suffers from high blood pressure, diabetes, and high cholesterol.   He also states that he has been diagnosed with a terminal illness, but does not describe such illness.  The April 2014 Presentence Report (PSR) reveals that the defendant was then diagnosed with Type II diabetes and high blood pressure. The PSR also indicates that the defendant was being appropriately treated with prescribed medication.

The government notes that the defendant has not provided any medical records to the court to support his claim.  However, the government has obtained his medical records from the BOP which demonstrate that the defendant does, in fact, have diabetes, high blood pressure and high cholesterol.  As the government points out, the CDC has concluded that high blood pressure, diabetes, and high cholesterol "might" increase the risk of illness from COVID-19.  Thus, the government argues that, given the lack of data and certainty regarding the group of conditions that "might" increase the risk of severe illness from COVID-19, the defendant has failed to established that his current medical conditions warrant his immediate release. The government also states that medical records furnished by the BOP reveal that the defendant has refused to take insulin to help control his diabetes. These records also indicate that the defendant's current conditions are being properly treated with medications and that his medical conditions are under control.

The court finds that the defendant has demonstrated an extraordinary and compelling reason because of the fact that Type II diabetes has been identified by the CDC as a medical condition that might be exacerbated by COVID-19.  Accordingly, the court will conclude that

6

the defendant has, based on his medical conditions, demonstrated an extraordinary and compelling reason for consideration of a sentence reduction.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense.* In June 2013, the defendant was charged in a 7-Count Indictment. He pleaded guilty pursuant to a written Plea Agreement (ECF No.61) to the following offenses:

Count 2:     Possession with Intent to Distribute and Distribution of 28 Grams or More of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851;

Count 3:     Possession with Intent to Distribute and Distribution of a Quantity of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851;

Count 4:     Possession with Intent to Distribute and Distribution of a Quantity of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851;

Count 5:     Possession with Intent to Distribute and Distribution of a Quantity of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851;

Count 6:     Possession with Intent to Distribute and Distribution of a Quantity of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851; and

Count 7:        Possession with Intent to Distribute and Distribution of a Quantity of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851

The government filed an Information (ECF No. 30) pursuant to 21 U.S.C. § 851, notifying the defendant that he was subject to increased penalties based on the following prior convictions:    Possession of less than one gram of crack cocaine 1st, Indictment No. 96-GS-42-00351; Possession of Crack, Indictment No. 96-GS-43-00351; Distribution of Crack cocaine, Indictment No. 96-GS-43-00351; Distribution of crack cocaine near school, Indictment No. 96-GS-43-00351; and Distribution of crack cocaine 2nd, Indictment No. 97-GS-43-1133.

The United States Probation Office prepared a Presentence Report (PSR) (ECF No. 77) and determined that the defendant was a Career Offender pursuant to United States Sentencing Guideline (USSG) § 4B1.1(b).  His offense level was 34 and his criminal history category was VI, resulting in a Guideline range of 262 to 327 months.  This court sentenced the defendant to 262 months, the low end of the Guidelines, to be followed by 8 years of supervised release.

Crack cocaine is a powerfully addictive controlled substance that, unfortunately, plagues the Midlands area of South Carolina. In this case, the defendant pleaded guilty to six counts of possession with intent to distribute this dangerous drug.  The PSR contains intricate details about the defendant's drug dealing operations.  Ultimately, the defendant was held accountable for 280.12 grams of crack cocaine for Guideline sentencing purposes.

8

During the investigation, the defendant made several sales of crack cocaine to government operatives in controlled purchases. He then pulled his truck into a gas station and came to a stop. As the deputy approached him, the defendant sped off and fled from the scene. The deputy pursued the defendant for several blocks before observing a plastic bag being thrown out of the driver's window. While the chase progressed, the deputy reached speeds of approximately 60 miles per hour and traveled through several residential areas. During the chase, the defendant disregarded several stop signs and drove into the opposite lane of traffic several times. The defendant ultimately stopped his car in front of a residence, got out of the truck, and fled on foot. After a foot chase that led through several neighborhoods, the defendant finally surrendered and was taken into custody without further incident.

The PSR also reveals that the defendant resumed dealing in controlled substances shortly after being released from state custody for state drug charges. The defendant drove out of state to Atlanta, Georgia on approximately 8 occasions to purchase cocaine to bring back to South Carolina. On one of these trips, he purchased 1 kilogram of cocaine. Moreover, the defendant converted quantities of cocaine into crack cocaine for distribution.

In summary, the defendant was a major drug trafficker who was responsible for the distribution of multi-gram quantities of crack cocaine from at least January 2009 until his arrest on March 1, 2013 in the Sumter area of South Carolina.

After sentencing, the defendant did not file a direct appeal of his judgment and conviction.

9

Thereafter, this court granted reductions in the defendant's sentence as a reward for his substantial assistance to the government under USSG § 5K1.1.  The first reduction took the defendant's term of incarceration from 262 to 210 months, and the second reduction further reduced the defendant's term to 188 months.

2.  *History and Characteristics of the Defendant*.   The defendant's prior criminal convictions are noted above.

The defendant is 45 years old.  He has served approximately 90 months of his 180-month sentence.  His projected release date is November 9, 2026.  He is housed at the Federal Correctional Institution in Edgefield, South Carolina.

The defendant is single, having never married.  He has two children. The defendant was raised by his mother in Sumter, South Carolina. His father's involvement in his upbringing was limited until his mother became ill.

*Post Sentencing Conduct*

Since his sentencing in this case, the defendant has had two disciplinary infractions while incarcerated: possession of drugs/alcohol in 2016 and 2017.  The defendant has taken the following courses while incarcerated: Managing your Diabetes and Aids Awareness.  He is also working to obtain his GED.

The defendant's motion suggests that if he is released, his Aunt will assist him with his medical needs and he will reside with his father in Sumter, South Carolina.

3.  *Seriousness of the Crimes*.  As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4.  *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.  The court views this as a key factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.  The quantity of crack cocaine attributable to him, the high speed chase, and his adult criminal record all point to the conclusion that release is not appropriate at this time.

7.  *Need to Avoid Unwarranted Disparity*.  The defendant was the sole individual charged in this indictment.

11

CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[1] (ECF No. 134).

IT IS SO ORDERED.

January 7, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")